# **AFFIDAVIT**

Eli H. Sautter, first being duly sworn, deposes and says:

1. I am a Task Force Officer (TFO) with the Drug Enforcement Administration (DEA) and have been for approximately six (6) years. Prior to my assignment as a Task Force Officer, I was a Patrolman and Detective at the Cincinnati/Northern Kentucky International Airport Police Department. I have been employed as a police officer for twelve and one-half (12.5) years. As a Task Force Officer with the DEA, my duties have included the investigations of violations of federal laws concerning the importation, manufacture, possession and distribution of controlled substances as defined by Title 21, United Stated Code, including controlled substances such as heroin, cocaine, methamphetamine, and other dangerous drugs. During my tenure as a police officer, I have participated in numerous investigations involving drug trafficking and have attended numerous specialized training schools conducted by the DEA and other law enforcement agencies. Some of the training I have attended include: DEA Basic Investigators School, Operation Jet-way Training (Training that is specialized to airplane, train, and bus interdiction), INIA (International Narcotics Interdiction Association – specialized in airplane, train, and bus interdiction), Covert Investigations and many more. I have participated in all aspects of drug investigations, including physical surveillance, undercover operations, execution of search warrants, interdictions and arrests of drug traffickers.

2. The information in this Affidavit is based on my personal investigation and does not include all information obtained during this investigation, rather only that believed necessary to provide a legal basis for the civil forfeiture.

3. On September 25, 2015, agents from the DEA Cincinnati RO and detectives from the Cincinnati/Northern Kentucky International Airport Police Department (Airport Police) received information that Dane Estler was traveling from Philadelphia, Pennsylvania, to San Francisco, California, with a connecting flight through Cincinnati, on a suspicious flight itinerary: his airline ticket was purchased one (1) day prior to travel to a known source city/state. A check of his criminal history showed prior charges for possession in 2005.

4. DEA agents and officers responded to the airport terminal departure gate for the flight to San Francisco. As passengers began boarding the plane, TFO Richard Bernecker positioned himself behind the ticket agent so he could observe the passengers' names as their boarding passes were scanned. During the boarding process, TFO Bernecker noticed an unknown male matching the description of Estler acting in a nervous manner. The unknown male was fidgety, clutching his carry-on bag, and avoiding eye contact. TFO Bernecker continued to observe the unknown male while he waited in line. When the unknown male presented his boarding pass to the gate agent, TFO Bernecker confirmed that he was Dane Estler and signaled to TFO Conrad. Once Estler was in the entrance of the jet-way, TFO Bill Conrad identified himself as a police officer and asked Estler if he

could speak to him. Estler stated, "Yes." During the consensual encounter, Estler was standing in the open room prior to the jet-way, free to walk away at any time.

5. TFO Conrad then asked Estler for identification and he provided a New Jersey driver's license displaying the name Dane W. Estler. TFO Conrad explained to Estler that he and the other officers are part of an interdiction group looking for large sums of money and/or drugs related to narcotics and/or terrorism. TFO Conrad asked Estler if he had any large sums of money and/or drugs and Estler replied, "I have this" and opened his wallet. Inside the wallet was a large bundle of U.S. currency rubber-banded together. TFO Conrad asked how much was there and Estler stated "$10,000.00."

6. TFO Conrad asked Estler what was his purpose of travel and Estler stated he was going to San Francisco to hang out. TFO Conrad asked Estler if he had ever been arrested before and he stated, "No."

7. TFO Conrad asked Estler for consent to search his carry-on bags and his person. Estler consented to all searches and handed TFO Conrad his carry-on bag. TFO Conrad searched the carry-on bag and located two (2) prescription bottles for oxycodone prescribed to Christine Gordon. Estler stated that Christine Gordon is his mother. The carry-on bag also contained multiple packages of Avery shipping labels. TFO Conrad opened a package of the labels and found U.S. currency concealed between the sheets of labels. TFO Conrad asked Estler how

much currency was packed inside the label packages and he did not reply. Two (2) cells phones were also found in the carry-on bag.

8. TFO Conrad then conducted a search of Estler's person and located a Dramamine bottle with both yellow and blue pills inside. The pills were later determined to be oxycodone 30 and 40 mg tablets.

9. Estler's checked bag was brought to the jet-way and when he was asked, he denied that it belonged to him. There was a visible change in Estler's demeanor, the color drained from his face, and he began backing up. TFO Bernecker asked Estler if he was sure that was not his bag because it had his name on it. Estler again stated, "No" and TFO Bernecker checked the bag tag again. Estler then stated, "Yes" and appeared to be getting ready to run. TFOs Conrad and Bernecker asked Estler to sit in a chair in the boarding area and contacted me. I contacted the Airport Police Department Dispatch Center to request a uniformed officer and then proceeded to assist in the interdiction.

10. TFO Bernecker asked Estler why he was so nervous and what was in his bag? Estler responded, "Bad dope." TFO Bernecker asked if he meant marijuana, and Estler stated, "No." TFO Bernecker asked if it was cocaine, and Estler replied, "No." TFO Bernecker asked if it was heroin, and Estler said, "Yeah." TFO Bernecker asked Estler for consent to search the checked bag and Estler consented to the search. Multiple paper bindles were found concealed inside a thick wool sock; the bindles were rubber-banded together and contained a white

substance. At this time, Airport Police Detective Justin Kuhn and I arrived at the encounter.

11. TFO Bernecker continued the search of the checked back and located more paper bindles inside another sock; these bindles contained a brown substance. TFO Bernecker asked Estler if he was going to sell the heroin and Estler stated, "No." TFO Bernecker asked why it was all packaged for individual sale and Estler stated he purchased it that way.

12. I advised Estler that he was under arrest and Officer Tamera Humbert placed him in handcuffs and transported him to the Airport Police Department. TFO Bernecker and I transported all of Estler's belongings to the Airport Police Department for processing.

13. TFO Conrad interviewed Estler while TFO Bernecker, Det. Kuhn, and I processed the items found on his person and in his bags. The Dramamine bottle contained 21 oxycodone 30 mg tablets and 1 oxycodone 40 mg tablet. One of the prescription bottles labeled to Christine Gordon contained 67 blue oxycodone 30 mg tablets and the other contained 61 yellow 40 mg oxycodone tablets. Estler was in possession of a total of 62 oxycodone 40 mg tablets and 88 oxycodone 30 mg tablets.

14. All of the currency was then removed from the Avery label boxes. During this process, agents found multiple invoices for Audio Innovations, labels printed with Audio Innovations and Mark's Handcrafted Furniture, and a thumb drive.

15. The suspected heroin was removed from the checked bag and weighed. The total weight of heroin as packaged was 102.1 grams. A field test resulted in a positive for heroin.

16. Before interviewing Estler, TFO Conrad advised him of his right to remain silent and read him the Miranda warning. Estler verbally waived his rights, signed an Airport Police Department Waiver of Rights form, and agreed to speak with TFO Conrad. Estler stated that he was travelling to San Francisco to purchase marijuana. He stated that he buys marijuana for $1,500.00 to $2,000.00 a pound and sells it for $3,000.00 to $4,000.00 back home. Estler stated that he ships the marijuana to multiple addresses using the labels which are made to look like shipments to and from legitimate businesses. He also stated that he is unemployed and sells marijuana to produce an income. During the interview, Estler provided written consent for Sgt. Tim Cline and Det. Ken Coyle to search his Samsung and LG cell phones.

17. The currency seized from Estler's wallet and the Avery packages was hidden separately in places unknown to TFO Conrad and his narcotic K-9 partner Joey. Joey located both bundles of currency and gave positive indications for the presence of a narcotic odor on both.

18. The consent search of Estler's Samsung cell phone revealed numerous text messages indicative of drug trafficking.

19. The amount of currency from Estler's wallet was $8,401.00 and the amount packed in the label boxes was $53,000.00. The total of $61,401.00 was seized based upon probable cause that it was proceeds of drug trafficking or was intended for such use.

20. Several mitigating factors establish probable cause that the U.S. currency seized from Estler was proceeds of drug-related activities, including:

    - airline ticket purchased one day before travel;
    - travel to a known source city/state;
    - Estler's admission that he was going to purchase marijuana;
    - Estler's admission that he sells marijuana;
    - Estler's possession of controlled substances—pills and heroin;
    - Estler's admission that he is unemployed;
    - positive alerts by drug-detecting dog.

21. On or about November 23, 2015, Estler filed a claim in the DEA's administrative forfeiture proceeding.

For the above-stated reasons your affiant believes that the seized currency was furnished or intended to be furnished in exchange for controlled substances, was proceeds traceable to such an exchange, or was intended to be used to facilitate the illegal sale of narcotics

and is, therefore, subject to seizure and forfeiture to the United States of America pursuant to 21 U.S.C. § 881 (a)(6).

This 18TH day of February, 2016.

_____
Eli H. Sautter, Task Force Officer
Drug Enforcement Administration


Subscribed, sworn, and acknowledged before me by Eli H. Sautter this the 18 day of February, 2016.

My Commission expires: October 2, 2018

_____ 520432
NOTARY PUBLIC, STATE AT LARGE

8